### STATE v. WILLIAM EDWARD FENTRESS.

(Filed 13 April, 1949.)

**1. Automobiles § 28e—**

Evidence in this case of defendant's driving at an excessive speed while intoxicated, resulting in an accident causing the death of passengers in his car, held sufficient to sustain conviction of manslaughter.

**2. Criminal Law § 78d (1)—**

Where objection is not made to the question but only to the answer of a witness, its exclusion is discretionary with the court.

**3. Criminal Law § 81c (3)—**

Admission of testimony over objection is ordinarily harmless when identical matter is later introduced without objection.

**4. Automobiles § 28d—**

Where there is evidence that defendant was driving at excessive speed on the entire trip to and from a city in another state, the admission of testimony as to excessive speed at the beginning of the journey, even though somewhat remote, will not be held prejudicial.

**5. Same—**

Testimony of a witness that the car passed with the accelerator "wide open" and that in his opinion the car was traveling 85 miles per hour, *is held* competent as testimony of matters apprehended by the witness through his senses and relevant to the issue, and its admission does not constitute reversible error, certainly in view of its support from the physical facts at the scene of the wreck which occurred a few moments later, and the fact that the witness later testified to substantially the same import without objection.

**6. Automobiles §§ 28d, 28f—**

There was evidence that a fifth of whiskey was found in the wrecked car which defendant was driving and that shortly before the accident an officer of the law had told defendant he was too drunk to drive and required him to turn over the wheel to another. *Held:* The evidence of defendant's intoxication was sufficient to justify the court in reading the statute and charging the jury upon the law of drunken driving.

DEFENDANT's appeal from *Phillip's J.,* November Term, 1948, CASWELL Superior Court.

The defendant was tried on an indictment, in the statutory form, charging him with manslaughter, was found guilty and sentenced to State's Prison for a term of not less than two nor more than four years. From this judgment he appeals to this Court, assigning errors.

The indictment grew out of a collision and destruction of an automobile driven by the defendant in which Miss Frances Williamson, a guest

in the car, and one Melvin Braxton, also a guest, were killed. The indictment is for the slaying of Miss Williamson.

In support of the charge the State depended on (a) evidence of drunken driving by defendant; and (b) driving at an unlawful rate of speed; it being contended that the death of Miss Williamson was the proximate result of defendant's culpable negligence in both respects.

In summary and partly in narrative form the State's evidence tended to show as follows:

The evidence is concerned with an automobile trip from Greensboro, North Carolina, to Danville, Virginia, and a partial return made by seven persons; the defendant Fentress driving in his own car; Jack Kincaid and Miss Williamson; Mack Allred and Miss Williams, Melvin Braxton, and an unnamed "boy from Missouri." They got together somewhat casually at Greensboro and after visiting a number of "night places" in Greensboro and on the High Point-Greensboro road—the Casa Blanca, Boar and Castle, and other places where some of the parties got beers, at the request of Jack Kincaid the party started to Danville where Kincaid and Miss Frances Williamson purposed to get married, and Allred and Miss Heddy Williams were like-minded. On arrival at Danville Melvin Braxton was left in the car and the others went into the house of a preacher in order to have the ceremony performed. They were told that the marriage could not take place that night because a blood test had to be first made and license obtained. They returned to the car.

Meantime the boy left in the car had begun to raise a disturbance and the police had arrived. The police "walked" them to test their condition as to intoxication, told the defendant Fentress he was "too high" to drive and required him to turn over the wheel to the Missouri boy whom he found sober enough to drive. On the return Fentress resumed driving and continued driving until the "accident." A witness testified that Fentress was "speeding" from the time they left Greensboro until the accident. Witnesses testified to warning Fentress that he was going too fast and asking him to slow down.

The first time evidence of such a warning was introduced the following occurred:

"Q. What was said by anybody in the car about his driving?

"A. A couple of them told him to slow down between Greensboro and Reidsville." Defendant objected; overruled, and exception.

There was further evidence that defendant was warned about the speed he was making after leaving Danville in the direction of Reidsville to which there was no objection.

J. T. Foster testified that he lived about three-quarters of a mile "above the accident" on the left side of 86 coming towards Yanceyville.

"Q. On this particular night did you see or hear this automobile?

"A. I heard it. Had just closed up shop and went in and this car came through and I thought it was going to hit the service station. I heard the car going through and the accelerator wide open and I got up and went to the porch and it had done hit."

The defendant objected; overruled; exception. Later this witness further testified: "As I heard the car approaching and heard it pass my house my opinion would be that it appeared to be wide open. I would say 85 miles." Later, after testimony concerning the map was entered, the witness testified without objection that as he heard the car approaching and heard it pass his house it appeared to be wide open and in his opinion was traveling at the rate of 85 miles per hour. A few moments after hearing the car pass he heard a crash and proceeded immediately to the scene of the accident. He further described conditions he found,—the car demolished and the bodies of the occupants scattered over the ground in different positions.

G. D. Dodson, a State Highway Patrolman, testified that he was sleeping about three blocks from where the accident occurred, was awakened by the crash, after which it was quiet; listened for more noise and heard a scream; dressed and went down to the place.

The accident occurred at a curve in the highway. There were skid marks tracing the path of the car but the brakes had not been applied. The marks indicated that the car was part time going sidewise, hitting the first tree, making a complete turn and hitting the second tree. The highway was dry. The car was practically demolished, jammed and buckled up, and the occupants scattered on the ground between the wheels. He found in the car a "5th" of whiskey in the glove compartment. Frances Williamson and Melvin Braxton died.

The State rested and the defendant demurred to the evidence and moved for judgment as of nonsuit, which was denied, and defendant excepted. Defendant offered no evidence but, (possibly by way of precaution), again moved for judgment as of nonsuit, which was denied, and he excepted.

(Objections to the instructions given the jury will be noted in the opinion.)·

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*P. W. Glidewell, Sr., for defendant, appellant.*

SEAWELL, J. The motion for judgment of nonsuit upon the evidence was properly overruled.

STATE v. FENTRESS.

The objections to the admission of evidence is with respect to (a) warnings given the defendant by the occupants of the car that he was driving too fast and to slow down; (b) to the statement made by the "cop" at Danville, to Fentress that he was "to high" to drive, compelling him to relinquish the wheel to the "boy from Missouri" who seemed to be sufficiently sober; (c) admitting the evidence of J. T. Foster as to hearing the car pass with the accelerator wide open and going at terrific speed.

All these exceptions are subject to criticisms which affect their validity as presenting reversible error. First, objection is only to the answers and not made until the matter was in, under conditions which made exclusion discretionary with the court. S. v. Hunt, 223 N.C. 173, 176, 25 S.E. 2d 598; S. v. Stancill, 178 N.C. 683, 687, 100 S.E. 241. Second, testimony as to the identical matter was later introduced without objection. S. v. Hunt, supra; S. v. Stancill, supra.

We observe a distinction with respect to the warning given between Greensboro and Danville as being too remote in time elapsed and distance traveled to stand alone as independent evidence; but there is evidence that defendant was speeding from the time he left Greensboro until the accident. Taken with the whole evidence we do not find it sufficient to justify reversal on the theory of prejudicial error.

Furthermore, the evidence of Foster who testified that he heard the car passing with a great noise and at a rapid rate of speed does not lack circumstantial support, since its roaring progress stopped with a loud crash at the point where he found it a moment later, torn to pieces and its occupants lying on the ground about the wreck.

When relevant to the issue, a witness may testify to any thing he has apprehended by any of his five senses, or all of them together. The objection goes to the weight and significance rather than to the competency of the evidence. At any rate, the witness later testified to substantially the same thing without objection.

Appellant objects to the reading of the statute relating to drunken driving, on the ground that there was no evidence of defendant's intoxication. We do not agree with the ground of the objection and, therefore, not with its merit. The instruction to the jury brought forward by exception in defendant's brief was given in relation to this statute. The objection is based upon the same theory, that is that there is no evidence in the record of defendant's intoxication. As already stated, we cannot so hold, and cannot sustain the exception.

Other exceptions not discussed have been examined. On the whole record we do not find reversible error.

No error.