**EMPLOYERS CASUALTY COMPANY, a corporation, Plaintiff–Appellant,**

v.

**EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY, a corporation, Defendant–Appellee.**

No. 78–2519.

United States Court of Appeals, Fifth Circuit.

Dec. 17, 1980.

Rehearing Denied Jan. 21, 1981.

---

Huie, Fernambucq, Stewart & Smith, Eugene D. De Martenson, Birmingham, Ala., for plaintiff–appellant.

McDaniel, Hall, Parsons & Conerly, Robert E. Parsons, Birmingham, Ala., for defendant–appellee.

Before MORGAN, ANDERSON and RANDALL, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

Appellant Employers Casualty Company (Employers) filed this diversity action seeking a pro rata contribution from Employers Commercial Union Insurance Company (Commercial Union) for $100,000 paid by Employers in settlement of personal injury claims arising out of an accident involving a 1969 Dodge truck. Commercial Union, by counterclaim, sought contribution from Employers for $15,000 it paid out as an excess insurer for the same accident. The district court, following a non–jury trial, held that Employers was not entitled to any contribution from Commercial Union, but that Commercial Union was entitled to an equal contribution of $7,500 from Employers as a co–excess insurer. We affirm.

## I. FACTS

The facts are somewhat complicated but revolve around a central figure, Robert E. Owens. Robert Owens operated a sole proprietorship under the name Owens Fabricating Co. (Owens Fabricating) engaged in the business of sheet metal fabrication in Pelham, Alabama. Owens Fabricating was insured under an automobile liability policy, No. CZD 73–65–88, issued by Commercial Union which named "Robert E. Owens, d/b/a Owens Fabricating Co." as the insured. In addition to describing some 17 vehicles, the policy also contained an endorsement and premium charge for non-owned vehicles. The policy limits were $250,000 per person and $500,000 per accident.

Robert Owens was also a partner with John Brignet doing business as Russellville Steel Company (Russellville Steel) in Russellville, Alabama. Russellville Steel was insured by Employers policy No. 79–28–04. Named insureds in the policy were "Robert E. Owens, Individually, and John Brignet, Individually and d/b/a Russellville Steel Co." The policy limits were $100,000 and $500,000. At the time of the accident, the 1969 Dodge truck at issue was listed on this policy.

Owens was also the dominant force in a corporation known as Franklin Machine Works, Inc., also of Russellville, Alabama. Owens owned 51 percent of the common stock and Brignet owned the other 49 percent for Owens' benefit. By policy No. 79–28–90, Employers also insured Franklin with personal injury limits of $100,000 per person/$500,000 per accident. "Robert E. Owens, Individually and Franklin Machine Works" were the named insureds.

Therefore, Robert E. Owens, individually, was a named insured under each of the three policies.

On December 14, 1974, Franklin Machine Works purchased a used 1969 Dodge truck from Sunshine Biscuits Company. The truck was first described in Employers' policy issued to Franklin Machine Workers; however, on August 1, 1975, it was removed from Franklin's policy and added to Employers' policy issued to Russellville Steel Co. Employers concedes that Russellville Steel Co. became the owner of the vehicle.

On or about December 29, 1975, the truck was being driven by James Wright, Jr., an employee of Owens Fabricating, to make a delivery of steel to Franklin Machine Works. The vehicle became disabled and was stopped, protruding into the road, when it was struck by an automobile in which Marie Vinson was a passenger. Mrs. Vinson and her husband filed suit against Owens Fabricating, Robert Owens, James Wright and others for damages occasioned by the accident. The parties settled the suit for $115,000. Employers contributed $100,000, the limits of its policy to Russellville. Commercial Union denied that it was primarily responsible but did contribute $15,000 toward the settlement as an excess insurer.

Employers then commenced this suit for a contribution from Commercial Union for the $100,000 paid in settlement of the suit. Commercial Union counterclaimed for an equal contribution from Employers for the excess coverage under Employers' policy to Franklin Machine Works which cited Owens as a named insured. The evidence reveals that although the vehicle in question was listed in Russellville's (Employers') policy, it had been used by Owens Fabricating (insured by Commercial Union) for at least six months preceding the accident. At the time of the accident, it was driven by an employee of Owens Fabricating and displayed Owens Fabricating signs on its sides. Furthermore, the vehicle was licensed to Owens Fabricating. Nevertheless, the vehicle was never described in Commercial Union's policy issued to Owens Fabricating.

Robert Owens testified that there was frequent intermingling of vehicles among his various enterprises, but that he considered the vehicle in question to be owned by Russellville (Employers), the partnership. He explained that the truck happened to be licensed to Owens Fabricating because the vehicle was located at Owens Fabricating plant as the deadline for purchasing licenses approached. For convenience sake, he purchased the license in Owens Fabricating's name in Shelby County, Alabama.

The district court considered the following portions of the three contracts to be crucial. We agree and note that the provisions are identical in each of the contracts.

## II. PERSONS INSURED

\* \* \* \* \* \*

(e) With respect to the operation, for the purpose of locomotion upon a public highway of mobile equipment registered under any motor vehicle registration law,

(i) an employee of the named insured while operating any such equipment in the course of his employment and

(ii) any other person while operating with the permission of the named insured any such equipment registered in the name of the named insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization \* \* \* \* ·

CONDITIONS

\* \* \* \* \* \*

6. Other Insurance: The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.

When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

(a) Contribution by Equal Shares: If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

(b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

\* \* \* \* \* \*

## VI. ADDITIONAL CONDITION

Excess Insurance—Hired and Non—Owned Automobiles. With respect to a hired automobile or a non—owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured.

The district court concluded that Employers alone was primarily liable for coverage to the limits of the Russellville Steel policy, $100,000. Commercial Union was liable for the excess, $15,000, but was entitled to an equal contribution of $7,500 from Employers as co—excess insurer under its policy issued to Franklin Machine Works.

## II. DISCUSSION.

 This action is predicated upon diversity of citizenship; therefore, the substantive law of Alabama applies. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Employers concedes that it had primary coverage by virtue of its policy issued to Russellville which described the vehicle. The district court concluded that the excess insurance clause in Commercial Union's policy absolved it of primary coverage and made it only an excess insurer. It is beyond question that the district court's interpretation is correct if the 1969 Dodge truck was "non—owned" by the insured under Commercial Union's policy to Owens Fabricating. *See State Farm Mutual Automobile Ins. Co. v. Auto—Owners Ins. Co.*, 287 Ala. 477, 252 So.2d 631 (1971); *Protective National Ins. Co. of Omaha v. Bell*, 361 So.2d 1058 (Ala.1978). Employers argues, however, that the vehicle was also owned by Robert Owens, d/b/a Owens Fabricating, at the time of the accident and, therefore, Commercial Union's coverage is also primary. In a case where two or more insurance carriers have primary coverage, they share the liability either equally or in proportion to the limits of each policy as compared to the combined limits of all policies. *See State Farm Mutual Automobile Ins. Co. v. General Mutual Insurance Co.*, 282 Ala. 212, 210 So.2d 688 (1968).

The crucial issue, therefore, is whether the vehicle was owned or nonowned by "Robert E. Owens, d/b/a Owens Fabricating Co.", the insured under Commercial Union's policy. Although the district court made no explicit finding on the question of ownership, it must have found that Owens Fabricating did not own the vehicle in order to have concluded that Commercial Union was an excess insurer under the hired or nonowned automobile clause. Therefore, we must treat the court's conclusion as an implicit finding that Robert Owens, d/b/a Owens Fabricating, did not own the 1969 Dodge truck. This finding can be disturbed only if it is "clearly erroneous." Fed.R. Civ.P. 52(a).

We begin with Commercial Union's policy for a definition of owned or nonowned automobiles.

## V. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

\* \* \* \* \* \*

'Non–owned automobile' means an automobile which is neither an owned automobile nor a hired automobile;

'Owned automobile' means an automobile owned by the named insured;

These definitions provide little help other than making clear that ownership relates to the named insured.

Employers argues that Robert Owens is a named insured in all three policies, that Robert Owens owns the vehicle by virtue of his status as a partner in the Russellville partnership, and that the vehicle is thus an "owned" vehicle with respect to all three policies and thus that all three policies afford primary coverage.[1] According to Em-

ployers, the "other insurance" provision of the three policies provides that coverage should be shared by the three policies in proportion to their policy limits.

Since Employers concedes that the truck was in fact owned by Russellville, the crux of Employers' argument is that Robert Owens is also an owner by virtue of being a partner in Russellville. Employers argues that Alabama has rejected the entity concept of a partnership and adopted the theory that a partnership is merely an aggregate of its individual members. Thus, any property owned by the partnership of Owens and Brignet, doing business as Russellville, would be owned, separately and severally, by Owens and Brignet. We are not persuaded by Employers' interpretation of the Alabama partnership law.

Alabama has adopted the Uniform Partnership Act (UPA) with some modifications not material to our discussion. Although Ala.Code § 10–8–72(a) (UPA § 25(a)) states that "[a] partner is a co–owner with his partners of specific partnership property holdings as a tenant in partnership," it proceeds to destroy the traditional incidents of ownership. For example, a partner has no right to possess the property without the consent of the partners; a partner's right to specific partnership property is not assignable; and the right to property vests in the surviving partners rather than the estate of a deceased partner. One authority has made the following observation:

Although stating that each partner is a co–owner of the partnership property, the [§ 25 of the Uniform Partnership] Act systematically destroys the usual attributes of ownership .... Functionally, despite the literal language, *the partnership*

---

1. We recognize that Employers has argued that its policy No. 79–28–90, issued to "Robert E. Owens, individually, and Franklin Machine Works," should not contribute at all. In making this argument, Employers points out that Franklin Machine Works had no relation to this truck or to this accident, other than as a customer to whom a load of metal was being delivered at the time of the accident; however, Employers' argument fails to mention that Robert Owens is a named insured on the policy issued to Franklin Machine Works. Accordingly, if Robert Owens, individually, owns the truck–which is the thrust of Employers' principal argument–then it is clear that this second policy issued by Employers to Robert Owens, individually, and Franklin Machine Works also affords primary coverage. In the text, we have disregarded this inconsistent secondary argument, and set forth only the consistent application of Employers' primary argument.

*owns its property and the partners do not.* The Act would be better if it conceded this rather than accomplishing it by indirection.

Crane and Bromberg, *Law of Partnership* § 40(b) (1968) (footnotes omitted) (emphasis added). The weight of authority is that individual partners do not own partnership property. *See Salomon Bros. & Hutzler v. Pedrick,* 105 F.Supp. 210 (S.D.N.Y.1952); *Wolfe v. Hewes,* 41 N.C.App. 88, 254 S.E.2d 204 (1979); *Gaines v. Gaines,* 519 S.W.2d 694 (Tex.Civ.App.1975); 68 C.J.S. *Partnership,* § 85; 60 Am.Jur.2d *Partnerships,* § 102. It is apparent that a partner's real interest in the partnership is not ownership of specific property but rather "is his share of the profits and surplus." Ala.Code § 10–8–40. Accordingly, we do not believe that the ownership of the vehicle can be attributed to Owens simply by virtue of his interest in the Russellville partnership.[2]

Therefore, the district court's implicit finding that Robert Owens, individually, did not own the vehicle is not clearly erroneous.[3] Under the terms of Commercial Union's policy to Owens Fabricating, any coverage for the vehicle is for a nonowned vehicle, and accordingly is excess insurance.[4]

■ The district court also found in favor of Commercial Union on its counterclaim for contribution from Employers under its policy issued to Franklin Machine Works, Inc. The Franklin Machine policy also listed Robert Owens, individually, as a named insured and contained a provision for excess coverage for non–owned vehicles similar to the Commercial Union policy. Of course, our previous analysis shows that neither of the named insureds in Franklin's policy owned the automobile; Russellville Steel did. Therefore, any coverage is excess. The district court correctly held that the Franklin policy provided additional excess insurance for its named insured, Robert Owens, one of the defendants against whom the judgment in favor of Mrs. Vinson and her husband was entered.

■ Employers argues, however, that the district court erred in holding that the excess insurance should be shared equally rather than according to the proportion that the limits of each policy bears to the combined limits of both policies. Under the proportionate method, Employers would pay two–sevenths of the $15,000 and Commercial Union would pay five–sevenths. The method of allocating coverage in the two policies is the same. Each says that if the other policy provides for equal sharing, then the liability will be shared equally. Each policy also says that if the other insurance does not provide for equal contribution, then a pro–rata or proportionate method applies. In this case, both policies show a preference for contribution by equal shares. The district court did not err in apportioning the excess coverage equally between Employers and Commercial Union.

AFFIRMED.

2. *Accord State Farm Mutual Automobile Ins. Co. v. General Mutual Ins. Co.,* 282 Ala. 212, 210 So.2d 688 (1968) (whatever equitable rights a partner may have in a vehicle licensed to the partnership, he is not the owner of the vehicle within the meaning of an automobile liability policy).

3. We note that at the time of the accident, the vehicle was licensed to Owens Fabricating. The fact that a vehicle is licensed to an individual gives rise to a rebuttable presumption of ownership. *State Farm Mutual Automobile Ins. Co. v. General Mutual Ins. Co.,* 282 Ala. 212, 210 So.2d 688 (1968). Owens, however, has successfully rebutted that presumption. He testified that he considered the vehicle to be owned by Russellville, the partnership. He licensed the vehicle in the name of Owens Fabri-

cating simply for the sake of convenience. The vehicle was being used at Owens Fabricating plant as the deadline for renewing the license approached. Furthermore, Employers admitted that the vehicle was owned by the partnership.

4. Employers argues that the endorsement to the Commercial Union policy, providing a specific premium charge for nonowned vehicles, somehow converts the coverage to primary coverage for nonowned vehicles. We note, incidentally, that the premium charged for nonowned vehicles is small in comparison to that charged for listed vehicles. No language in the endorsement supports Employers' argument and it is, accordingly, rejected.